[Civ. No. 33743. First Dist., Div. Three. Jan. 27, 1975.]

ROBERT ALBRIGHT, Plaintiff and Appellant, v.
CITY OF SOUTH SAN FRANCISCO et al.,
Defendants and Respondents.

## COUNSEL

David J. Friedenberg for Plaintiff and Appellant.

John Noonan, City Attorney, and Robert S. Chadwick for Defendants and Respondents.

## OPINION

**GOOD, J.**\*— ▉ Appellant, a taxpayer in the City of South San Francisco, filed an action to enjoin the city's practice of paying councilmen and the mayor $50 and $75, respectively, per month as reimbursement for miscellaneous unitemized expenses incurred in the performance of their official duties. These flat sums were paid in addition to any itemized expenses for which individual officers would file particular claims. The flat claims were prepared monthly by the city clerk and signed by the claimants. They were processed, approved and ordered paid as a package along with all other claims presented at regular council meetings. The complaint also sought accounting and

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

reimbursement of the city treasury for all sums received by the officers involved since 1958. Depending upon length of service of individual officers, these sums vary from $9,575 down to $1,350. Attorneys' fees were also prayed for.

The practice apparently arose in 1958 when the amounts were $30 and $50 per month. It has continued until the filing of this action. Until appellant protested the practice, there was no resolution or ordinance fixing these amounts or providing for their payment. Therefore, we are not faced with an issue that had such ordinance existed, it could constitute a legislative determination that these amounts were actually and necessarily expended each month—a determination with which a court could not interfere or substitute its own judgment for that of the legislative body.

The trial court found that the councilmen and mayor each month submitted their claims for necessary and actual expenses in the performance of their duties. In a brief memorandum of decision the court states, "The attack by the plaintiff is one dealing with method and procedure; the court does not agree that the attack is successful." If this were accurate the evidence would justify affirmance of the judgment rendered. But, in our opinion, the determinative question is whether under the evidence and applicable statutes the claims were in themselves sufficient to support an order for their payment. Although some determinative sections of the Government Code and California Constitution were not cited either here or at trial, we cannot ignore them.

■ An expenditure of public funds is regulated solely by constitutional and statutory provisions and must be confined to public purposes. An expenditure of municipal funds is permitted only " . . . where it appears that the welfare of the community and its inhabitants is involved and . . . benefit results to the public." (4 McQuillin, Municipal Corporations (3d ed.) p. 66.)[1] ■ In the absence of a valid ordinance or resolution, a flat expense allowance to the extent that in any one

---

[1] We have deleted the phrase "in a clear case" and the adjective "direct" that McQuillin attaches to the word "benefit." The former deletion does not add to the statement of principle and the phrase might be interpreted to mean that justification of a challenged expenditure would require more than the ordinary preponderance of evidence. The latter deletion is made because the California Constitution appears to recognize that indirect social benefits may justify some expenditures (as in welfare and veteran's assistance programs). McQuillin cites *Hodges* v. *Kauffman* (1928) 95 Cal.App. 598 [273 P. 125], which held that expenditures incurred by councilmen in an unsuccessful effort to invalidate a recall petition were not a charge against the municipality.

month it exceeds amounts actually expended for a verifiable municipal purpose is the equivalent of a gift of public funds, in contravention of section 25, article XIII, of the California Constitution.

■ Respondents' reliance upon the authority of Government Code section 36514.5 is misplaced. The section reads: "City councilmen may be reimbursed for actual and necessary expenses incurred in the performance of official duties." This section does not abrogate the applicability of sections 37201 through 37205 of the same code. These require the filing of "demands" that are to be audited in the manner prescribed by ordinance or resolution and are accompanied by a verification of the accuracy of the demand. In *Adams* v. *City of Modesto* (1901) 131 Cal. 501, at page 502 [63 P. 1083] the court stated that the purpose of the requirement that funds be expended only upon demands presented to the council "is that they may be 'audited.' "

To audit is "to examine and verify." (Webster's Third New Internat. Dict.) ■ The informal practice that became custom in South San Francisco is such that neither *actuality* nor *necessity* of the components of the allowance is subject to verification. The specifics of where, when and purpose simply do not appear in the demands. Obvious questions arise: Are these expenses the same when a councilman is ill or on vacation? What portion is automobile expense or "availability"? If compensable, does the "availability" of a compact represent the same expenditure as medium or luxury automobiles? Were coffee breaks or meals with interested citizens related to specific municipal affairs? If audit is to be meaningful, some answer to these questions must appear. In this connection, we see no impropriety in permitting these officers to now supplement their pro forma claims with the detail necessary to show the actual and necessary expenditures that were reimbursable under Government Code section 36514.5.

■ Under Government Code section 905 (referred to in § 37201), claims for an employee's salary, mileage or expenses are excepted from demand requirements. But section 37206 requires the legislative body to prescribe by ordinance or resolution the time and method of paying salaries and wages of officers and employees. A mayor and councilman are public officers rather than employees. The omission of public officers from the section 905 exception and the existence of sections 36514 and 37206 indicate that the Legislature did not intend to waive demand requirements for reimbursement to officers of their expenses.

*Porter* v. *City of Riverside* (1968) 261 Cal.App.2d 832 [68 Cal.Rptr. 313], does not support respondents' contentions for the reason that, unlike our case, Riverside's charter precluded salary and provided that, in addition to reimbursement for "council-authorized and other" expense, councilmen were to receive "such amount as may be fixed by ordinance" as reimbursement for "expenditures imposed upon them by reason of their office." In addition to the charter mandate, when the *Riverside* case arose there was an ordinance that recited, by way of justification for a 1968 increase of the flat sums theretofore provided by 1953 and 1965 ordinances, that "inflation and greater demands on councilmen had resulted in an increase in out-of-pocket expenses" (at p. 834). The factors upon which the *Riverside* court rested its decision approving the flat allowance are not available to us. Here, we do not have an ordinance or resolution that could, possibly, be deemed an exercise of judgment or discretion by a legislative body which a court may not disturb. (Cf. *Porter* v. *City of Riverside, supra,* at p. 836, and fn. 2, *post,* re the effect of the "car availability" resolution of Feb. 7, 1972.)

█ Respondents contend that uncontradicted substantial evidence supports the findings and judgment and that appellate review is limited to the single question of the existence of such evidence. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875 [92 Cal.Rptr. 162, 479 P.2d 362]; *Coffee-Rich, Inc.* v. *Fielder* (1972) 27 Cal.App.3d 792 [104 Cal.Rptr. 252]; *Taormino* v. *Denny* (1970) 1 Cal.3d 679 [83 Cal.Rptr. 359, 463 P.2d 711].) These cases, cited by respondents, are inapplicable because the only evidence supporting the express finding that defendant "councilmen each month submitted a claim for actual and necessary expenses" or the implied finding that the flat amounts were actually and necessarily expended each month by the mayor and councilmen, is the testimony of one councilman, a former mayor, who testified that the flat amounts represented "the use of the automobile . . . cases where we have to meet with people and go to lunch or dinner . . . and just miscellaneous expenses that are so hard to tie down . . . [and] if a councilman took the time to itemize [them] that $50 would be closer to $70. In the case of the mayor, closer to $150." On cross-examination, "car availability" was included and it was stated that $40 would represent that item and "all other automobile expenses." The substantiality of the councilman's estimates is destroyed by his inclusion therein of this indeterminate amount for a "car availability" allowance.[2]

---

[2]The record shows that at the council meeting of February 7, 1972, 15 days before the filing of the complaint herein, when appellant and his attorney were protesting the propriety of the practice of the flat allowance, a councilman moved that "automatic

It follows that the denial of injunctive relief was error and appellant was entitled to an accounting. The judgment is reversed. The trial court is directed to grant the injunction and to take further proceedings by way of reference or trial to determine what actual and necessary expenses were incurred by each councilman and the mayor which should be a credit against his accountability for the sums received during the period not barred by limitations; and thereafter, to enter judgment in accordance with the views expressed herein.

Draper, P. J., concurred.

**BROWN (H.C.), J.**—I concur with the majority opinion. Since it would impose an impossible and inequitable burden on defendants to attempt to reconstruct past petty expenses by itemization, I would further direct the trial court, or such referee as he might appoint, to follow any accepted accounting procedures which would allow the trial court or accountant to use an averaging method to determine petty expenses. Such procedure, of course, would not apply to the requirement of a detailed accounting of expenses claimed in the future.

---

expense payment be terminated." The second to this motion was withdrawn upon the advice of the city attorney that the city did not make automatic expense payments. The city attorney then suggested "a motion that would authorize the filing of expense claims, listing the expenses, and establishing as a monthly expense, an automobile availability charge of forty dollars." The seconding councilman "so moved" and the motion was passed.

There was a stipulation that the charge so established would not be paid "during the pendency of the action or until further order of the court." The question of propriety of this motion as within the authority of a general law city was not litigated. Its validity and effect will have to be determined by further proceedings at the trial level. But until February 7, at least, it is apparent that the flat allowance included an automatic reimbursement without legislative sanction for which the councilmen and mayor had to account.