EDMUND G. BROWN JR. Attorney General DIANE EISENBERG Deputy Attorney General
THE HONORABLE GEORGE C. RUNNER, JR., MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a city provide a vehicle allowance to its city council members in lieu of reimbursing actual vehicle expenses after such expenses are incurred?
 CONCLUSION
A city may provide a vehicle allowance to its city council members in lieu of reimbursing actual vehicle expenses after such expenses are incurred. *Page 2 
 ANALYSIS
We are asked whether a city may provide a vehicle allowance to members of its city council, rather than reimbursing the members for their actual vehicle expenses. The main difference between a vehicle allowance and a vehicle expense reimbursement is that an allowance is paid out in regular, pre-determined installments, while a reimbursement is paid out after an expense has been incurred, and in an amount corresponding to the actual expense.
Three statutes — Government Code sections 1223, 53232.2, and 53232.3 — are central to our inquiry.[1] Section 1223 permits city council members to contract directly with the city for a vehicle allowance when the council members' travel expenses are allowed by law.[2] Section 53232.2 establishes requirements for reimbursement of city council members' travel expenses, [3] and section 53232.3 requires that expense report *Page 3 
forms, accompanied by receipts, be filed for all reimbursable expenses.[4]
It has been suggested that because sections 53232.2 and 53232.3 (the "reimbursement statutes") were enacted after section 1223 (the "allowance statute"), they control the issue and it is therefore no longer lawful for a city to provide city council members with a vehicle allowance.[5]
We reject this suggestion, and conclude that a city *Page 4 
may provide a vehicle allowance to its council members as authorized by the allowance statute.
The allowance statute was enacted in 1943[6] and provides that, when travel expenses are allowed by law to a public official, the official "may contract with the appropriate authorities for an allowance or mileage rate for the use of vehicles owned or rented and used by him in the performance of duty, in lieu of the usual transportation charges." Only a few cases construe or cite this statute. In the leading case,Citizen Advocates, Inc. v. Board of Supervisors, the court of appeal found the statute to be an exception to the general rule against public officers entering into contracts in which they have a financial interest, [7] and upheld the validity of vehicle allowances as a benefit to the public.[8] By its own terms, the allowance statute authorizes the provision of a vehicle allowance only when travel expenses are otherwise allowed by law. Thus, a vehicle allowance is permissible only if travel expenses are authorized by statute, ordinance, or charter.
The reimbursement statutes were enacted in 2005 as part of a bill[9]
that was designed to require local governments "to act with more transparency when they deal with issues such as compensation and travel reimbursements."[10] The bill added two new *Page 5 
articles to the Government Code covering compensation[11] and ethics training.[12] These articles apply to local agencies, which include both general law cities and charter cities.[13]
In order to determine whether the reimbursement statutes enacted in 2005 were intended to supersede the allowance statute, we apply well-established principles of statutory construction. According to those principles, "our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, [we] must look first to the words of the statute themselves, giving to the language its usual, ordinary import."[14] We begin by looking at the words "reimbursement" and "allowance."
To "reimburse," in ordinary usage, means "to pay back (an equivalent for something taken, lost, or expended)" or "to make restoration or payment of an equivalent" to someone.[15] Subdivision (c) of section 53232.3 provides that members of a *Page 6 
legislative body "shall submit expense reports within a reasonable timeafter incurring the expense" (emphasis added), and that the expense reports "shall be accompanied by the receipts documenting each expense" (emphasis added). Thus, reimbursable expenses are only those that have already been incurred and that can be documented by receipts.
An "allowance," in contrast, is generally understood to be a fixed amount on a periodic, such as a monthly, basis.[16] Because an allowance covers a designated period, it may apply to expenses that are expected to be incurred but that have not yet been incurred. A public officer's vehicle allowance is presumed to be a reasonable approximation of the aggregate costs associated with use of the vehicle in the performance of official duties, and generally does not entail a detailed itemization of those expenses; variations in costs from month to month are presumed to balance out. In addition, some components of a vehicle allowance may represent costs that are difficult to quantify precisely, or for which the officer makes no discrete expenditure and receives no receipt. For example, in Citizen Advocates, the court held that a vehicle allowance was compensation not merely for the time that a public officer was driving his or her own vehicle on official business, but also for the fact that the officer was required to have the vehicle standing by for use on official business at all times.[17] As the court stated:
 It may be presumed that those officials and employees designated by respondent County to receive the $100 per month car allowance are county officers and employees whose duties require frequent trips on county business. [Citation omitted.] If the duties of the officer or employee require frequent and adequate transportation in conducting county business, the keeping available of his privately owned or leased vehicle with which to conduct county business would be in the performance of his or her duty. Thus, availability serves an "actual and necessary" purpose.[18]
We note that the allowance statute itself presents a vehicle expense allowance as an alternative to a vehicle expense reimbursement: It states that an officer "may contract . . . for an allowance or mileage rate for the use of vehicles owned or rented and used by *Page 7 
him in the performance of duty, in lieu of the usual transportationcharges."[19]
Having clarified our terms, we turn to the crux of the question, that is, whether the new reimbursement statutes supersede the old allowance statute. First, we note that nothing in the language of the reimbursement statutes expressly precludes paying a city council member or other member of a legislative body for expenses by means other than an after-the-fact, dollar-for-dollar reimbursement. These sections merely set forth requirements that must be met "[w]hen reimbursement is otherwise authorized by statute"[20] — such as by section 36514.5 — and "[i]f a local agency reimburses members of a legislative body for actual and necessary expenses incurred in the performance of official duties."[21]
Further, we are compelled to assume that the Legislature was cognizant of the allowance statute when it enacted the new legislation.[22] "The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended."[23]
The Legislature did not expressly repeal or amend the allowance statute when it addressed the subject of travel expenses in 2005. We presume, then, that the Legislature did not intend to abrogate the authority granted by the allowance statute. We find reinforcement for this presumption in the fact that the 2005 legislation amended two (and only two) statutes authorizing flat allowances "in lieu of" the payment of "actual expenses."[24] The bill left intact the expense allowance provisions in these statutes, even as it added to them new provisions referring to the new reimbursement statutes.[25] We *Page 8 
take this as a powerful demonstration that the Legislature did not regard expense allowances, such as vehicle allowances, to be inconsistent with the new reimbursement statutes.
Nor do we construe the reimbursement statutes as impliedly nullifying the allowance statute. As a matter of statutory construction, all presumptions are against a repeal by implication.[26] In the absence of an express declaration of legislative intent to repeal a statute, a court will find a repeal only when there is no rational basis for harmonizing the two statutes, and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation."[27] We believe that there is a rational basis for harmonizing the allowance statute with the reimbursement statutes, so *Page 9 
as to avoid implied repeal and preserve the validity of all.
The allowance statute provides that a vehicle allowance may be the subject of a contract between specified public officers and local authorities, but is otherwise silent as to how the allowance should be provided. We believe that all the statutes at issue may be harmonized by treating a vehicle allowance as a specialized form of compensation, as the Citizen Advocates court did when it described a vehicle allowance as a fee "in compensation of public officers," in part for having their private vehicles standing by.[28] Compensation in this sense is distinguishable from the purpose of reimbursement as provided for by the reimbursement statutes. Government Code section 36516 specifically provides that amounts paid by a city to reimburse a council member for actual and necessary expenses shall not be included for purposes of determining the council member's salary.[29] We are informed that some cities which provide car allowances to members of their city councils do, in fact, report the allowance amounts as wages for income tax purposes.[30]
There is also a historical basis for treating a vehicle allowance as different from (but not in conflict with) a vehicle expense reimbursement. City council members were required to account for their claims for reimbursement well before the enactment of the reimbursement statutes. The statutes governing the financial powers of cities prescribe that all monetary claims against a city must be accompanied by a verification of the accuracy of the claim.[31] As early as 1975, these requirements were held to apply to claims of city council members for reimbursement of actual and necessary expenses incurred in the performance of their duties.[32] In other words, reimbursement requirements *Page 10 
similar to those set forth in the reimbursement statutes have operated concurrently with the allowance statute for many years, without conflict.
Moreover, we perceive no conflict in the policies underlying the allowance statute and the reimbursement statutes. It is well established that any expenditure of public funds, including a reimbursement or an allowance provided to a public officer, "is permitted only where it appears that the welfare of the community and its inhabitants is involved and benefit results to the public."[33] Otherwise the expenditure is a gift of public funds, in contravention of the California Constitution.[34] While a vehicle expense reimbursement and a vehicle allowance both serve public purposes, these purposes are not necessarily identical. The express purpose of the bill that enacted the reimbursement statutes was to help ensure integrity and transparency in local government.[35]
While preventing misuse of public funds should ultimately help conserve public funds, the legislation was not expected to realize cost savings for the public directly. One analysis of the bill commented that most local agencies "would incur varying levels of cost for review and revision of local policies to comply with the bill . . . and potentially greater review of member travel expense claims,"[36] and another analysis stated that "costs to special districts are unknown, but likely significant," and likely not reimbursable.[37]
On the other hand, the purpose of a vehicle allowance provided to city council members or other public officers is to realize administrative and other cost savings and efficiencies for the public. The CitizenAdvocates court found that "the provisions for a car allowance plus mileage is deemed to be for the benefit of and in the best interests of *Page 11 
the County,"[38] and noted that the county's practice resulted in substantial savings to the county by relieving the county of the necessity of purchasing, servicing and maintaining cars for various county officers and employees. As the court stated:
 It is logical to conclude that the Legislature when enacting section 1223 intended a reasonable solution to the problem presented by the necessary use of vehicles privately owned or rented and used by said officials and employees in the performance of their duties. . . . This interpretation carries out the obvious intent of the Legislature by permitting the least costly expenditure of public funds.[39]
As did the county in Citizen Advocates, a city could conclude that providing a vehicle allowance to city council members rather than reimbursing them for itemized vehicle expenses could benefit the public.[40] Whether a particular program serves a public purpose is primarily a legislative determination that will not be disturbed by the courts so *Page 12 
long as it has a reasonable basis.[41] Of course, the amount of the allowance must be reasonably related to what is required for the performance of an officer's public duties.[42]
Finally, providing a reasonable vehicle allowance to city council members in lieu of reimbursing them for their vehicle expenses does not undermine the Legislature's intent to ensure greater transparency in local government. Under the Ralph M. Brown Act, [43] a city ordinance, including an ordinance to determine compensation, must be considered prior to adoption at an open and public meeting at which members of the public have an opportunity to comment.[44] The amount of a car allowance as established by local ordinance or resolution is public information. The charter of a charter city, which may also provide for compensation,[45] is also a public document. And even if the allowance statute could not be completely reconciled with the reimbursement statutes, we believe that car allowances would still be lawful. As our Supreme Court has stated:
 "It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." [Citations omitted.] This principle applies whether the specific provision was passed before or after the general enactment.[46] *Page 13 
The allowance statute deals specifically with a vehicle allowance as a method for paying for authorized travel expenses. The reimbursement statutes deal more generally with reimbursable expenses related to a variety of subjects, including but not limited to travel. Accordingly, to the extent of any conflict, the allowance statute would prevail over the other two sections.
Accordingly, we conclude that a city may provide a vehicle allowance to its city council members in lieu of reimbursing actual vehicle expenses after such expenses are incurred.
[1] Unless otherwise indicated, all code section references in this opinion are to the Government Code.
[2] Government Code section 1223 provides in full:
 When traveling expenses are allowed by law to any state, county, judicial district, or city officer, he may contract with the appropriate authorities for an allowance or mileage rate for the use of vehicles owned or rented and used by him in the performance of duty, in lieu of the usual transportation charges.
[3] Section 53232.2 states in pertinent part:
 (a) When reimbursement is otherwise authorized by statute, a local agency may reimburse members of a legislative body for actual and necessary expenses incurred in the performance of official duties. . . .
 (b) If a local agency reimburses members of a legislative body for actual and necessary expenses incurred in the performance of official duties, then the governing body shall adopt a written policy, in a public meeting, specifying the types of occurrences that qualify a member of the legislative body to receive reimbursement of expenses relating to travel, meals, lodging, and other actual and necessary expenses.
 (c) The policy described in subdivision (b) may also specify the reasonable reimbursement rates for travel, meals, and lodging, and other
 actual and necessary expenses. If it does not, the local agency shall use the Internal Revenue Service rates for reimbursement of travel, meals, lodging, and other actual and necessary expenses as established in Publication 463, or any successor publication.
[4] Section 53232.3 provides in pertinent part:
 (a) If a local agency reimburses members of a legislative body for actual and necessary expenses incurred in the performance of official duties, then a local agency shall provide expense report forms to be filed by the members of the legislative body for reimbursement for actual and necessary expenses incurred on behalf of the local agency in the performance of official duties. Reimbursable expenses shall include, but not be limited to, meals, lodging, and travel.
 (b) Expense reports shall document that expenses meet the existing policy, adopted pursuant to Section 53232.2, for expenditure of public resources.
 (c) Members of a legislative body shall submit expense reports within a reasonable time after incurring the expense, as determined by the legislative body, and the reports shall be accompanied by the receipts documenting each expense.
 . . . .
 (e) All documents related to reimbursable agency expenditures are public records subject to disclosure under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1).
[5] A city council member is both a "city officer" for purposes of the allowance statute (§ 36501) and a "member of a legislative body" for purposes of the reimbursement statutes (§§ 53232(b), 54952). Accordingly, all three sections are applicable to city council members. We note that sections 53232.2 and 53232.3 apply only to members of local legislative bodies. Therefore, these sections have no bearing on other officers or employees.
[6] Stats. 1943 ch. 134, § 1223 (eff. Jan. 1, 1944). Section 1223 was derived from the second paragraph of former Political Code section 920. Section 1223 was amended by Stats. 1951 ch. 1553, § 5 in minor ways that are not relevant to this opinion.
[7] The general rule against conflicts of interest in government contracts is codified at Government Code section 1090.
[8] Citizen Advocates, Inc. v. Bd. of Supervisors,146 Cal. App. 3d 171, 176 (1983). Although the vehicle allowance recipients in Citizen Advocates were members of a county board of supervisors and other elected county officials, rather than members of a city council, the decision's reasoning is relevant to our issue. Likewise, although we do not discuss the law specific to counties in this opinion, we believe our reasoning would also apply to county boards of supervisors.
[9] Stats. 2005 ch. 700 (Assembly 1234), § 3 (eff. July 1, 2006).
[10] Assembly Third Reading of Assembly 1234 (as amended Apr. 5, 2005), 2005-2006 Reg. Sess. 4 (Apr. 20, 2005). Assembly 1234 grew out of a number of well-publicized incidents involving misuse of public resources by several special districts and localities. See id.
[11] Article 2.3 (§§ 53232-53232.4).
[12] Article 2.4 (§§ 53234-53235.2).
[13] Local agencies also include counties, and all cities and counties. §§ 53232(c), 53234(b). With respect to charter cities, counties, and cities and counties, see also Stats. 2005 ch. 700 (Assembly 1234), § 41, which states: "The Legislature finds and declares that transparency in the activities of local governments is a matter of statewide concern and not merely a municipal affair, as that term is used in Section 5 of Article XI of the California Constitution. Therefore, this act shall apply to charter cities, charter counties, and charter cities and counties."
Our Supreme Court has stated, "It has long been settled that, insofar as a charter city legislates with regard to municipal affairs, its charter prevails over general state law [citations omitted]," but, "as to matters of statewide concern, charter cities remain subject to state law." Sonoma Co. Org. of Pub. Employees v. Co. of Sonoma, 23 Cal. 3d 296,315-316 (1979). The Court also explained that the Legislature is not the final arbiter of what constitutes a matter of statewide concern, and that declarations of the kind expressed in section 41 are not controlling. Seeid. at 316. A full analysis of whether Assembly 1234 applies to charter cities is beyond the scope of this opinion, but for the purpose of analysis we assume that it does.
[14] Dyna-Med, Inc. v. Fair Empl. Hous. Commn., 43 Cal. 3d 1379,1386-1387 (1987).
[15] Webster's Third New International Dictionary of the EnglishLanguage (Unabridged) 114 (Merriam-Webster Inc. 2002).
[16] Id. at 58 ("fixed amount allowed"). A well known employment practice guide offers sample language for a contractual provision for a vehicle allowance as follows: "During the term of this Agreement, Employer shall pay Employee a car allowance in the sum of [dollar amount] per month." See Bonnie Bogue, et al., Advising California Employers andEmployees vol. 1, § 2.52, 144 (CEB 2009).
[17] Citizen Advocates, 146 Cal. App. 3d at 179.
[18] Id.
[19] § 1223 (emphasis added).
[20] § 53232.2(a) (emphasis added); see § 36514.5 (authorizing reimbursement for council members' necessary and actual expenses).
[21] § 53232.3(a) (emphasis added).
[22] Estate of McDill, 14 Cal. 3d 831, 837-838 (1975) (citation omitted).
[23] Id.
[24] Health Saf. Code §§ 2030, 2851.
[25] Health Safety Code § 2030, which governs compensation and expenses of members of boards of trustees of mosquito abatement and vector control districts, provides in pertinent part:
 (b) The members of the board of trustees may receive their actual and necessary traveling and incidental expenses incurred while on official business. In lieu of paying for actual expenses, the board of trustees may by resolution provide for the allowance and payment to each trustee a sum not to exceed one hundred dollars ($100) per month for expenses incurred while on official business. A trustee may waive the payments permitted by this subdivision.
 . . . .
 (d) Reimbursement for these expenses is subject to Sections 53232.2 and 53232.3 of the Government Code.
Health and Safety Code section 2851, which governs terms of office and compensation of district board members of pest abatement districts, provides:
 The members of the district board shall hold office at the pleasure of the board of supervisors. They shall serve without compensation, but shall be allowed their necessary traveling and other expenses incurred in performance of their official duties. In lieu of expenses, the district board may, by resolution, provide for the allowance and payment to each member of the board of a sum not exceeding one hundred dollars ($100) as expenses incurred in attending each business meeting of the board. Reimbursement for these expenses is subject to Sections 53232.2 and 53232.3 of the Government Code.
We construe the phrase "[r]eimbursement for these expenses" in these statutes to refer to the verifiable expenses described in the first sentence of subdivision (b) of section 2030, and in the second sentence of section 2851.
[26] Garcia v. McCutchen, 16 Cal. 4th 469, 476-477 (1997).
[27] Id.; see also Dyna-Med, 43 Cal. 3d at 1387 ("statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.").
[28] Citizen Advocates, 146 Cal. App. 3d at 177, 179.
[29] § 36516(f) ("Any amounts paid by a city to reimburse a council member for actual and necessary expenses pursuant to Section 36514.5 shall not be included for purposes of determining salary pursuant to this section."); see § 36514.5 ("City council members may be reimbursed for actual and necessary expenses incurred in the performance of official duties. Reimbursement for these expenses is subject to Sections 53232.2 and 53232.3.")
[30] We do not suggest that a vehicle allowance will necessarily amount to wages for income tax purposes. A discussion of the ways in which cities may properly structure their compensation packages is beyond the scope of this opinion.
[31] §§ 37201-37205.
[32] Albright v. City of South San Francisco, 44 Cal. App. 3d 866,870 (1975); see also 65 Ops.Cal.Atty.Gen. 517, 520 (1982).
[33] Albright, 44 Cal. App. 3d at 869.
[34] Section 6 of article XVI of the Constitution states in pertinent part: "The Legislature shall have no . . . power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever. . . ."
[35] See Dept. of Fin. Bill Analysis/Enrolled Bill Rpt. on Assembly 1234 (as amended June 29, 2005), 2005-2006 Reg. Sess. 2 (July 6, 2005).
[36] Dept. of Fin. Bill Analysis/Enrolled Bill Rpt. on Assembly 1234 (as amended June 29, 2005) at 1.
[37] Sen. Republican Fiscal Office Analysis of Assembly 1234 (as amended June 26, 2005), 2005-2006 Reg. Sess. 1. Assembly 1234 was considered not to constitute a mandate because it applies only to agencies that voluntarily choose to compensate the members of their legislative bodies. Id.; see also Dept. of Fin. Bill Analysis/Enrolled Bill Rpt. on Assembly 1234 (as amended June 29, 2005) at 1.
[38] Citizen Advocates, 146 Cal. App. 3d at 177. One of the issues addressed by the court was whether section 1223 authorized providing an officer with both a vehicle allowance and a mileage reimbursement; the court held that it did. Id. at 177-178.
[39] Id. at 178.
[40] The 1975 case of Albright v. City of South San Francisco,44 Cal. App. 3d 866, instructs that a city's decision to issue car allowances to its council members must be enacted by ordinance or resolution. The Albright court held that a city's payment to the mayor and city council members of a flat allowance for miscellaneous unitemized expenses in addition to reimbursements for itemized expenses was improper in the absence of a valid ordinance or resolution authorizing the allowance. The court did not disapprove of flat allowances as a general rule but rather emphasized that the allowance payments in the factual scenario presented to it arose and continued simply as an informal practice. The court contrasted the facts before it to those of Porter v.City of Riverside, 261 Cal. App. 2d 832 (1968). In Porter, the court upheld an ordinance fixing an expense allowance for city council members, as was authorized by the city charter, even though the charter also prohibited council members from receiving compensation for their services "as such." Porter, 261 Cal. App. 2d at 834, 839. The Albright court stated: "Here, we do not have an ordinance or resolution that could, possibly, be deemed an exercise of judgment or discretion by a legislative body which a court may not disturb," Albright, 44 Cal. App. 3d at 871, and that "had such ordinance existed, it could constitute a legislative determination that these amounts were actually and necessarily expended each month-a determination with which a court could not interfere or substitute its own judgment for that of the legislative body." Id. at 869.
[41] Cal. Hous. Finance Agency v. Elliott, 17 Cal. 3d 575, 583 (1976);Co. of Alameda v. Carleson, Cal. 3d 730, 746 (1971).
[42] There are resources available to enable a city to establish an empirical basis for the amount of a car allowance. The American Automobile Association and various transportation consultants publish information on the costs of owning and operating a motor vehicle, and some consultants can tailor a computation of such costs to a particular geographic area or job position.
[43] §§ 54950-54963. The Brown Act applies both to general law and charter cities. § 54951; San Diego Union v. City Council,146 Cal. App. 3d 947, 958 (1983).
[44] See §§ 36934-36935 (passage of ordinances by legislative body of a city), 54953(a) (requirement under Brown Act that meetings be open and public), 54954.3 (requirement under Brown Act that public have opportunity to address legislative body).
[45] Cal. Const. art. XI, § 5(b).
[46] Miller v. Super. Ct., 21 Cal. 4th 883, 895 (1999) (citation omitted); accord Richardson-Tunnell v. School Ins. Program for Employees(SIPE), 157 Cal. App. 4th 1056, 1065 (2007); see also Civ. Code §1859. *Page 1